IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| )  | |
| Plaintiff,   ) | |
| )  | |
| v.   ) | No. 3:15-cr-30018 |
| )  | |
| STEVEN JONES,   ) | |
| )  | |
| Defendant.   ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Defendant Steven Jones has been charged with three counts relating to his possession of methamphetamine and his illegal possession of a firearm. Jones has filed a motion to suppress evidence asking the Court to suppress the evidence seized after a drug-detection dog alerted to Jones' truck. Jones argues that the police violated the Fourth Amendment when they unreasonably prolonged his traffic stop to wait for the dog to arrive.

Pursuant to the Court's oral ruling on March 18, 2016, the motion (d/e 22) is DENIED.

I.  **Background**

The testimony and evidence presented at the suppression hearing established that Jones was driving a pickup truck in Quincy, Illinois, on March 21, 2015.  Quincy Police Officer Paul Hodges was driving eastbound on Chestnut Street when he passed Jones, who was driving westbound.  Officer Hodges noticed that Jones' truck did not have a front license plate, a violation of 625 ILCS 6/3-413(a).  At 8:03 p.m., Officer Hodges radioed to dispatch that he was going to initiate a traffic stop.

Officer Hodges initiated the traffic stop and parked about 2 car lengths behind Jones' truck.  Officer Hodges got out of his police car and walked up to Jones' truck.  He explained the purpose of the stop and asked for Jones' identification.  Jones did not have any identification but identified his name and date of birth.  Officer Hodges asked for Jones' proof of insurance, and Jones spent 2 or 3 minutes looking but could not produce any.

Officer Hodges returned to his police car and used the "walkie-talkie" function on his department-issued cell phone to ask his colleague, Officer Raymond Tyler, whether Officer Tyler recognized Jones' name.  Officer Hodges did this because he recognized Jones'

truck—a gold Ford F-150 with the word "roofing" written on it in various places—as a truck that one of his fellow officers had noted was suspected to be involved in illegal activity.

Officer Tyler responded that he did recognize Jones' name, that he believed Jones had some involvement with illegal methamphetamines, and that he would come to the scene.

After speaking with Officer Tyler, at approximately 8:09 p.m. Officer Hodges radioed dispatch and provided Jones' name and date of birth.  Dispatch responded that Jones' driver's license was valid. Officer Hodges asked for the information on Jones' driver's license—driver's license number, expiration date, descriptors, and other information—to be sent to his in-car computer so that he could copy the information onto a citation for Jones' lack of insurance and onto a warning ticket for Jones' missing front license plate.  At approximately 8:13 p.m., Officer Hodges radioed dispatch again to ask that the registration information for Jones' truck also be sent to his in-car computer.

While Officer Hodges was filling out the paperwork for the citation and the warning, Officer Tyler arrived on the scene.  Officer Tyler ran his drug-detection dog around Jones' truck.  When the

dog alerted, Officer Hodges got out of his police car and walked back up to Jones' truck. Officer Hodges asked Jones to get out of the truck, which Jones did. Officer Hodges asked Jones if he had any idea why the dog had alerted. Jones said he did not know.

Officer Hodges walked Jones to the front of Officer Hodges' squad car and asked for consent to search Jones' person. Jones gave consent, and Officer Hodges searched Jones but found no contraband.

Officer Tyler then watched Jones while Officer Hodges returned to and began searching Jones' truck. Officer Hodges found a zippered blue bag between the driver's seat and the center console. Inside, Officer Hodges saw a glass pipe and what looked like methamphetamine. At approximately 8:17 or 8:18 p.m.—14 minutes and 47 seconds after Officer Hodges radioed to dispatch that he was going to initiate the traffic stop—Officer Hodges used his portable radio to ask Officer Tyler to arrest Jones. Officer Tyler did so.

Officer Tyler placed Jones in the back of Officer Hodges' police car. Officer Hodges retrieved his camera and evidence kit from the trunk of his squad car. He took photos of the glass pipe and the

methamphetamine. He also found a loaded pistol on the floorboard of Jones' truck. The officers took Jones to the police station, where Jones gave a statement after being Mirandized.

Although the Quincy Police Department's police vehicles have dashboard cameras, the video of Jones' arrest no longer exists. Officer Hodges requested the video from the Quincy Police Department 1 ½ months after the arrest, and in response he received in his mailbox a disc that he logged into the file for this case. Later, however, Officer Hodges discovered that he had received the wrong disc: the disc he received contained the video from his police car facing backwards from the car—not the video facing forwards, where the events had occurred.

An audio recording of the police radio traffic before and after the arrest, however, does exist. That recording is not time-stamped, but cross-referencing the length of the recording with the paper records regarding Officer Hodges' communications with dispatch allows for an approximation of the times that the events in question occurred. The parties discussed this issue at length during the suppression hearing, and the Court in this opinion relies on the

same time calculations on which the parties relied during the hearing.

## II. Analysis

Police may stop a vehicle if they have probable cause to believe the driver committed a traffic violation. Whren v. United States, 517 U.S. 806, 810 (1996). Such a traffic stop is a "seizure" for Fourth Amendment purposes. Id. at 809-10.

Under normal circumstances, the use of a drug-detection dog around a car's exterior during a traffic stop poses no Fourth Amendment issues. Illinois v. Caballes, 543 U.S. 405, 410 (2005) (upholding dog sniff that second officer conducted while first officer wrote warning ticket). But if a stop is justified solely by the interest in issuing a ticket, the stop becomes unlawful if it is "prolonged beyond the time reasonably required to complete that mission." Caballes, 543 U.S. at 407. When the tasks related to the stop's purpose have ended—or reasonably should have ended—the authority to detain the car's occupants ends as well. Rodriguez v. United States, 135 S.Ct. 1609, 1614 (2015) ("Authority for the seizure ... ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."). The "critical question"

is whether the stop was prolonged by the sniff. Id. at 1616. Officers must be "reasonably diligent" in pursuing the traffic-related purpose of the stop. Id. "If an officer can complete traffic-based inquiries expeditiously, then that is the amount of time reasonably required to complete the stop's mission." Id. (remanding for consideration of whether reasonable suspicion of criminal activity justified detaining defendant beyond completion of traffic stop) (quotation and alteration omitted).

Here, the question is whether Officer Hodges unreasonably prolonged the traffic stop of Jones to wait for the arrival of Officer Tyler and the drug-detection dog.

Jones argues that Officer Hodges was not diligent in completing the traffic stop. Jones says that Officer Hodges was "crafty" in his delay and that what proves it is the "tale of the tape"—a reference to the missing dashboard camera video. (Argument of counsel, March 18, 2016 suppression hearing.) See United States v. Stepp, 680 F.3d 651, 662 (6th Cir. 2012) (because "crafty" officer may delay writing ticket until drug-detection dog arrives, "[an] unreasonable extension of a not-yet completed traffic stop" constitutes seizure under Fourth Amendment). Jones also

argues that affirmative evidence of Officer Hodges' dilatory tactics is seen in the fact that Officer Hodges called Officer Tyler <u>before</u> radioing dispatch with Jones' name and date of birth.  If the purpose of the stop was to issue Jones a traffic ticket, Jones says, then Officer Hodges should have radioed dispatch with Jones' name and date of birth before calling Officer Tyler.

Jones also questions why Officer Hodges asked dispatch for Jones' full driver's license information at approximately 8:09 p.m. but did not ask dispatch for Jones' truck's registration information until approximately 8:13 p.m.  That 4-minute delay, Jones says, is further evidence of Officer Hodges' efforts to allow Officer Tyler and the drug-detection dog to arrive before the traffic stop ended.

The Government argues that Officer Hodges did not unreasonably delay the traffic stop to wait for the drug-detection dog to arrive.  While the Government acknowledges that the proper inquiry is Officer Hodges' diligence in completing the traffic stop, not precisely how long the stop lasted, the Government nonetheless emphasizes that a very short amount of time passed between the beginning of the stop and the drug-detection dog's arrival and subsequent alert.

The parties agree that Officer Hodges radioed dispatch that he was about to conduct a traffic stop of Jones at 8:03 p.m. The parties also agree that Officer Hodges radioed for Officer Tyler to arrest Jones at approximately 8:17 or 8:18 p.m. What <u>is</u> in dispute is the precise time of the drug-detection dog's alert. The Government estimates that 9-to-10 minutes elapsed between the start of the traffic stop and the dog's alert, which would place the alert at 8:12 or 8:13 p.m. (Argument of counsel, March 18, 2016 suppression hearing.) The Government reaches this conclusion by working backwards from the arrest time of 8:17 or 8:18 p.m. and estimating that 4 or 5 minutes must have elapsed during the events between the alert and the arrest:

- Officer Hodges got out of his police car and walked two car lengths to Jones' truck;
- Officer Hodges asked Jones to get out of the truck;
- Officer Hodges escorted Jones to Officer Hodges' police car;
- Officer Hodges acquired Jones' consent to search Jones' person;
- Officer Hodges searched Jones' person and found no contraband;
- Officer Hodges walked back to Jones' truck;
- Officer Hodges began searching Jones' truck;
- Officer Hodges found a zippered blue bag between the driver's seat and the center console;

- Officer Hodges searched the bag and found a glass pipe and what appeared to be methamphetamine;
- Officer Hodges asked Officer Tyler to arrest Jones.

Regardless of whether the Government's estimates are accurate, the Court finds that the stop was not unreasonably prolonged or delayed to wait for the drug-detection dog. Specifically, the Court finds that Officer Hodges diligently performed the tasks associated with the traffic stop. At the beginning of the stop, Officer Hodges spent a few minutes questioning Jones—a length of time that likely is presumptively reasonable on its face but that was made all the more reasonable here by Jones' lack of any driver's license and his search for proof of insurance. See United States v. Muriel, 418 F.3d 720, 726 (7th Cir. 2005) ("as part of the stop police may ask the vehicle's occupants a moderate number of questions") (quotation omitted); United States v. Childs, 277 F.3d 947, 954 (7th Cir. 2002) (approving of "[q]uestions during a routine traffic stop that do not concern the purpose of the stop (and are not supported by any other suspicion), yet extend the stop's duration"). Officer Hodges then returned to his police car and radioed dispatch to run Jones' name and date of birth through their system. Upon learning that Jones had a valid driver's license and that Jones was

not subject to any outstanding warrants, Officer Hodges asked for Jones' complete driver's license information in order to fill out the paperwork for a citation for Jones' lack of insurance and for a written warning for Jones' missing front license plate.  The Court finds Officer Hodges' testimony regarding his diligence in completing that paperwork—which he began in his squad car and finished at the Quincy Police Department—to be credible.  As Officer Hodges testified, once the information came through, he needed to manually transfer each item of information from his computer screen onto the paper documents—all the while keeping an eye on Jones' truck.  That this process would last several minutes—on top of the minutes spent talking to Jones and requesting the information from dispatch in the first place—is to be expected, not suspected.

  Nonetheless, the Court has serious concerns about the Quincy Police Department's failure to preserve the dashboard camera video from Jones' arrest.  The Court hopes that the U.S. Attorney's Office will work with the Quincy Police Department to develop protocols and procedures to ensure that dashboard camera videos are not destroyed prior to suppression hearings.  Still, the Court does not

find the video's absence to be sufficient to justify granting Jones' motion to suppress. The testimony, the documentary evidence, and the audio evidence all support a finding that Officer Hodges did not unreasonably delay Jones' traffic stop.

### III. Conclusion

For the reasons above, the Court finds that Officer Hodges did not unreasonably prolong his traffic stop of Jones to wait for the arrival of the drug-detection dog. As stated in the Court's oral ruling on March 18, 2016, Jones' motion to suppress (d/e 22) is DENIED.

ENTERED: April 1, 2016

FOR THE COURT:        <u>s/ Sue E. Myerscough</u>
                      SUE E. MYERSCOUGH
                      UNITED STATES DISTRICT JUDGE